Good morning. May it please the Court. My name is Glenn Herra. I represent the plaintiff, Appellant Dr. Radha Geismann, MD, PC. Well, it's deja vu all over again. This is the second time this case has been before this court on an order from the District Court allowing the defendant, ZocDoc, to pick off my plaintiff's individual claims in this putative class action under the TCPA. The first time around, the defendant made a Rule 68 offer of judgment and an open-ended settlement offer. The District Court held that the offer rendered the plaintiff's individual claim moot and then entered an individual judgment for the plaintiff over her objection. While we were on appeal to this court, ZocDoc deposited the amount of the offer with the District Court. And this court reversed in ZocDoc 1, and the court held that all of those actions, alone or in combination, did not moot the plaintiff's individual claim. Because mootness, under the Supreme Court's decision in Campbell-Ewald v. Gomez, means that it is impossible for the District Court to award any meaningful relief to the plaintiff. And depositing money with the court does not make it impossible to grant meaningful relief. In fact, it presupposes that the District Court will go further to disperse the funds, something that a court can only do if it has subject matter jurisdiction. Can't do that in a moot case. All you can really do with a moot case is to dismiss it without prejudice. The second time around, on remand, the defendant made another open-ended offer of $20,000, made a motion to deposit the funds, which we opposed. The District Court granted the judgment for the plaintiff over her objection, struck her class claims, and now we're back here before the court again. What do you make of the issue that the Supreme Court left open, the hypothetical that they said they weren't ruling on? What do you make of that? And isn't that what Judge Stanton was essentially doing here, following up on that, that the area that the Supreme Court had left open? He was. I think the Seventh Circuit Court of Appeals got that correct in Fulton Dental, where it said that hypothetical was either raised by the parties or it was raised in Chief Justice Roberts' dissent about what happens if there's a deposit of funds, or it might have been Justice Alito's dissent. And the Seventh Circuit said the court was expressly not deciding that issue. It wasn't saying the District Court should allow a deposit of funds. It didn't say that this hypothetical would result in a moot claim. It was just saying that question's not before us, so we're not going to decide it. And it warned against the Seventh Circuit in Fulton Dental, warned against reading too much into hypothetical questions that the Supreme Court leaves undecided, because that's all they are. They're just undecided questions that weren't present on the facts before the court. Judge Stanton seemed to assume that the presence of  a deposit of funds would allow District Courts to do that. But it didn't do anything of the sort. So we have two main points. Didn't we comment on that, at least in passing, in a footnote in the previous decision, saying that you can try, but that doesn't mean you're going to win? Geisman 1. Correct. The court said, well, what the court said in Geisman 1, however we want to refer to it, is, on remand, the court, the District Court, may in its discretion allow a deposit of funds, as it ordinarily may, but the basis for doing so must not be inconsistent with this opinion. Now, the basis for the District Court's deposit orders at page 60 of the appendix, the only rationale the District Court gave was that the deposit of full relief renders the action moot. That was the District Court's basis for allowing the deposit. But Geisman 1 had just held that a deposit of funds does not render the action moot. So the basis for the deposit was inconsistent with this Court's decision on remand, and the District Court violated the mandate, the mandate rule. It's not consistent with the law of the case. It's also completely inconsistent with the fair opportunity requirement in Campbell-Lewald v. Gomez. The Supreme Court held in that case that a plaintiff with a live claim of her own must be afforded a fair opportunity to deposit. Everyone agrees, ZocDoc concedes, that at the time they filed their motion to deposit, my plaintiff had a live claim of her own. ZocDoc concedes that after the deposit was made, my client still had a live claim of her own. And yet, the only basis for the deposit order was to moot our claim, even though that's erroneous and it doesn't moot a claim. But still, the District Court was going out of its way to not give us a fair opportunity at class certification. Trying to do with Rule 67 what they had been unable to do with Rule 68. That's correct. And the Circuit Court decision that's right on point there is Fulton-Dental v. Biscoe, the Seventh Circuit decision, where they said there's no meaningful distinction between trying to force a settlement offer on a plaintiff, a putative class plaintiff, using Rule 68, or trying to force a settlement offer on a plaintiff using Rule 67. In either case, all you have is an unaccepted offer, which we have been clear, thank you, but no thank you. We're not interested in individual settlement. We want to pursue this as a class case. The law authorizes class certification in TCPA cases. We've gotten many classes certified. And we've clearly sought that in our complaint. Let me be sure I understand you. Your position is that a class plaintiff, that their individual claim cannot be mooted as long as the question of class certification is still out there? Is that your position? Short of them voluntarily accepting the settlement? Correct, Your Honor. And so we would have to conclude that part of the relief that the class plaintiff is seeking is class certification? Yes. Okay. That's part of what she's seeking. Now, let's assume that the class certification motion is decided, and it's decided against certification. What happens at that point? Can the judge decide that the claim is moot at that point? Yes, Your Honor. Based on what? That's what – based on – well, that's what happened in Lease v. Lifetime Entertainment Services. It's an unreported decision from this Court in the past year. But the plaintiff got discovery, got to move for class certification. Class cert was denied. But what I'm saying is you would have the deposit of the money, the district court entering a judgment in favor of the plaintiff individually, and the adverse ruling on the motion for class certification. You're saying you need all three of those to moot the plaintiff's claim in a class – in a putative class action? Correct. If class certification is denied and the individual plaintiff, out of sheer obstinacy or madness, is the language in Justice Kagan's dissent in Genesis Healthcare, decides that they don't want to settle and they want to go to trial over a $500 to $1,500 claim in a federal court, then yes, the district court – Well, it would then have to order the money paid out to the plaintiff. It couldn't just sit in the court – in the court clerk's office. Correct. The district court would do what it did in lease and what the district court did in Roper v. Deposit Guarantee Corporation that went to the Supreme Court in 1980. There, the class cert was denied. The district court entered judgment for the individual plaintiffs. First, the defendants deposited the funds to the court. Judgment was entered. And then the plaintiffs got to appeal the denial of class certification on the merits. I can't appeal – What happens to the adequacy and typicality analysis at Rule 23 in this situation? I know that's not the issue before us, but playing it out, what's going to happen then? Is the judge not going to be able to take into account the fact that the money's been deposited or the injunctive relief has been agreed to? I think the court should take it into account, class certification, and I think it makes my plaintiff more adequate because it shows that she is not going to sell out the class to advance her own interests. She's going to turn down a $20,000 offer in order to look out for everybody else. Now, I don't have a decision right on point with that. There's language in Roper, the Supreme Court's decision, talking about that question. You know, the court said the plaintiff's claim is still alive. There might be an impact on adequacy, and the Seventh Circuit talked about it in Chapman v. First Index as well, that there might be an affirmative defense of accordance satisfaction available to the defendant. I'd like to get to that point. I'd like to get some discovery into how many faxes Zokdok sent, where they got their list of fax numbers, whether they used a fax broadcaster, and I want to get the electronic transmission records that show what they did here. We'll get to class certification. Zokdok can make whatever arguments it has against class certification at that time, and we'll respond to them. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. I'm Blaine Kimrey, and I represent the appellee in this case, Zokdok. Hello again, Judge Sack. This is not deja vu all over again, because for deja vu, the same thing has to occur twice, and here we're dealing with a fundamentally different procedural posture, which some of your questions have touched on. For the following three primary reasons, this Court should affirm the judgment of Judge Stanton. Number one, and this is very interesting, in Mr. Harrah's argument, there was no mention of Article III or constitutional standing. That's the core issue before the Court. Number one, unlike in Rule 68 cases, Judge Stanton entered judgment after a deposit order in this case. So this case is fundamentally distinguishable from the procedural posture that came before this Court previously, and does precisely invoke the Campbell-Ewald hypothetical. Number two, in light of more than complete relief having been granted, there is no Article III standing here. There is no case or controversy. There is no injury in fact. That all goes to whether or not one can force a person to accept a settlement in a class case, or whether the class or the request for class certification is part of the dispute. Right, Your Honor. And — It seems to me that what we have to deal here, everyone has been talking about the offer and then the entry of judgment as making the plaintiff's claim moot, and I'm wondering if that's really accurate, or whether it's more aptly described, I think the Seventh Circuit may even have said this, as more like a court in satisfaction, which are affirmative defenses, not — they don't necessarily moot the case, they're affirmative defenses to it. Help me out. I don't think that we should get hung up on the word moot, because the word moot, from a lay perspective, has a certain meaning, and it can also be a term of art. I think Okay. Except that if it's an affirmative defense, you don't have a lack of Article III standing. You may get the case dismissed based on a defense, but you don't have a lack of standing to make the claim. Yeah. It's not an affirmative defense. All right. So I'm not sure that talking about Article III jurisdiction is very helpful here. I'm more concerned with the language the Supreme Court used about needing to give the class representative a fair opportunity to litigate this question of class standing. Once the class representative says, I don't want the settlement, why isn't it the court's obligation to, as the Supreme Court says, accord it a fair opportunity to show that certification is warranted? Why doesn't that have to be the next step? Well, first of all, this plaintiff, the appellant, has had more than a fair opportunity. This case has been pending for four years. So let's back up. The court hasn't defined. So there's the fair opportunity language in Campbell-Ewald, which I acknowledge. The court has not defined what fair opportunity means. Now, here, I believe that the plaintiff has gotten more than a fair opportunity, because the plaintiff has been litigating this case for four years, and not a single other class representative has come forward. Okay? Sotomayor What was the plaintiff supposed to do to get the class certification question before the judge that it didn't do? Fisher So this was actually raised in one of, I think, your prior cases, where the issue of an opt-in was addressed by the court under the FLSA. Sotomayor The plaintiff can't be heard. I'm asking you to assume the plaintiff can be heard. Where do you say it didn't avail itself of the opportunity to secure a class certification? Fisher The plaintiff has been heard. The plaintiff has been heard on the plaintiff's individual claim. And the plaintiff lacks standing to proceed on behalf of the class until a class certification decision. That's consistent with Roper. It's consistent with Garrity. It's consistent with Sosna. Sotomayor What has the plaintiff not done that it should have done to get that, to have that rule? Fisher Well, the ruling has happened. The claim is resolved. If — so this isn't preclusive, and this is something that has been raised with me before. What is the difference here is that if plaintiff's counsel had wanted to proceed on a class action, plaintiff's counsel needed to identify another class representative. This particular class representative's claim has been fully satisfied. It's been extinguished. Sotomayor I'm not sure we're — well, I can only speak for myself that I'm there with you yet. We're trying to understand what the Supreme Court's controlling language is here. It says the individual claim was not made moot by the expired settlement offer. So that claim would retain vitality during the time involved in determining whether the case could proceed on behalf of a class. Now, you're saying, okay, it wasn't made moot by the expired settlement offer, but is your argument it was made moot by the district court's entry of judgment? Fisher So, again, I don't want to get hung up on the word moot. Sotomayor Well, moot is what the Supreme Court uses. Fisher I understand that. Sotomayor And if it's not moot, then the party has an ability to say, well, my claim is vital and I want to have the class certification decided. Your Honor, you're reading dicta from Campbell-Ewald. Campbell-Ewald is limited to the issue of a Rule 68 offer of judgment. There is a lot of dicta in Campbell-Ewald that admittedly is confusing. There's this fair opportunity language, but there's also language in the majority opinion about the court not ruling on the precise procedural posture that is before this court. And then there are the dissents by Justice Roberts and Alito that say, yeah, we're really happy that the court made clear that it wasn't ruling on that because if this particular situation, the hypothetical, came before us, we at least, Roberts and Alito, would rule differently. And I do — that ties into a comment that Judge Sack made about footnote 8 in the prior Geisman opinion. This court said, if you try to invoke that hypothetical, it may not work. But this court did not say, if you try to invoke that hypothetical, it won't work. And so, basically, what we were — It would have been wrong to say that, wouldn't it? What? It would have been wrong to have said that, wouldn't it? It would have been an advisory opinion, but that doesn't mean judges don't give advisory opinions sometimes. But, yeah, I agree, as a matter of the law and how it should be applied, that would be an improper advisory opinion. However — and it may be, Your Honor, that you have some skepticism about this, you know, vehicle. However, I don't think Justice Roberts shares that skepticism. I don't think Justice Alito shares that skepticism. We're not trying to read people's minds. But — We're trying to figure out at what point you think the plaintiff's claim lacks vitality and on what basis you've said it's not helpful to discuss it as moot. So I'm trying to figure out on what grounds do we find that the entry of judgment means that the plaintiff's claim is not — no longer vital. The plaintiff has said, I don't want that judgment because it's not complete. The relief I am seeking is not simply relief for myself. It is relief for the class. The claim is extinguished upon the deposit and then the entry of judgment. I'm not sure that's true, by the way. Isn't the law that it has to actually be in the plaintiff's hand? No, it's not, Your Honor. The relief has to be tendered to the plaintiff, which hasn't happened here yet. That's not correct. We did tender. We tendered and they rejected the court. By the court. The court — The court's judgment has to not simply leave the money in the — The court cut a check. The court's registry. The court cut a check and sent it to the plaintiff. I'm sorry. Okay. Yeah. But — That actually happened. Thank you for clarifying that. So, yeah, it's been tendered. It's been — it was put in escrow. And, you know, this court in Macaulay, which I believe, Your Honor, was — But how is that enough to extinguish a class-based claim? Well, so it doesn't — it doesn't extinguish the class. It's not res judicata as to the class. If there were another plaintiff with — that fell within this putative class, that plaintiff could proceed. It just — it just means that the class claims with respect to this now fully satisfied, inadequate class rep — and Your Honor raised the issue of adequacy, which, by the way, you could decide this appeal on the adequacy issue because you can affirm on any basis. So if you affirm based on adequacy as opposed to, you know, the lack of Article III standing, that would be perfectly appropriate. Why is not — why is this not an adequate or appropriate — an appropriate class representative? As a matter of law, this — my time has run out. May I answer the question? Thank you. Okay. Because this particular class representative's claim has been fully satisfied and extinguished, this class representative now faces a defense that is completely unique to this class representative. And — Back to the next one and the one after that and the one after that. No, not necessarily, Your Honor. So this is — and this is the thing. So they argue that we're going to destroy class actions generally, right? That's ridiculous. This is limited to the situation where you have a statutory damage amount and the plaintiff concedes what his or her cap is of recovery. This is a very unique case in which the plaintiff has conceded over and over and over and over again that its maximum recovery is $12,000, okay? Nobody else after this case is going to do that. They're going to obfuscate. They're going to multiply in greater amounts. This is a unique scenario in which we have a statutory damage amount that has been conceded. So this — Next people who sue your client are going to lie so that — They're not going to sue my client because my client doesn't do this anymore. And that's why there hasn't been any claims related to my client. And that actually ties into the transitory issue, capable of repetition but, you know, evading review. That's not the case here. This is a situation where, you know, the activity that was engaged in is no longer at issue. And, oh, by the way, if we ever got into the underlying facts — well, that's not before this Court, but I'm confident my client would do very well before Judge Sten. But he's ruled that this case, as to this particular class representative, is over. And that is consistent with this Court's precedents in cases like McCauley and with Campbell-Ewald, the hypothetical that the Court — the U.S. Supreme Court has asked us, I believe, to invoke, which we've done precisely here. Thank you, Mr. Kimball. Thank you. Mr. Harry, you've reserved a few minutes. Thank you, Your Honor. I'll start with the claim that this is a unique kind of case. It's a TCPA case with statutory damages. It's actually very common. I mean, not just in the TCPA, but there's the Fair Credit Reporting Act, Truth in Lending Act. I mean, there are all kinds of statutes that have — where Congress has created a statutory damages amount because it's difficult or impossible to determine what actual damages are and because Congress wants to deter that kind of behavior, both with the specific defendant and generally. So it's — allowing class action pick-offs in small-value consumer class actions like this will basically eliminate them from federal courts. You won't be able to enforce these statutes on a class action basis. So it'll just be free reign for defendants to do whatever they wish. Mr. Kimberley claims that ZocDoc doesn't junk fax anymore, which is great to hear. I'd like to test that assertion. I'd like to see how many faxes they sent in the broadcasts that were in July and October of 2012 when my client received the faxes. I'd like to know when else they were sending faxes. I'd like to know who at ZocDoc designed these fax advertisements. Was there an outside marketing company involved? Was there a fax broadcaster involved? Where did they get the list of fax numbers? Did they make any attempt to get prior express invitation or permission from the recipients? We don't think so, and Dr. Geisman certainly didn't. But these are all unanswered questions that can be answered. We know how to get the answers to these questions. Both Judge Ragge and Judge Sack asked what else we should have done, the plaintiffs should have done, in order to try to seek class certification. ZocDoc says that we had a fair opportunity at class certification because the case is four years old. But all we've done in four years is litigate ZocDoc's pick-off attempts. We've done literally nothing else, and we have implored Judge Stanton, let us do discovery. Let's do a 26F conference. Let's have the parties exchange their Rule 26A1 disclosures so we can get the ball rolling on discovery. Enter a case management order. Not discovery in order to decide if you can get class certification? Yes. You're not in a position now to move for class certification? We need some limited discovery to do that. We need to know the number of faxes sent, primarily. Where did they get the list of fax numbers? Did they hire a fax broadcaster? That's a company that specializes in sending faxes. They have the special equipment and multiple phone lines that can send tens of thousands of faxes at one time. If you're standing at a stand-alone fax machine in your office trying to send 20,000 faxes, you're going to be there for two weeks pressing in each number. Let me ask you this. Your adversary suggested that with an offer of the statutory amount to your client that the plaintiff is no longer an adequate class representative. To the extent you want to conduct discovery as that representative, that puts it in a different posture than if you are ready to make the motion and you don't need to do anything more than make the motion. So why should we not consider that question of how adequate your client is as a representative? First of all, the judgment and the deposit, we want all that undone. We want it reversed and vacated. ZocDoc would have you say, look at the status quo as it is today. The judgment's been entered. The deposit's been made. Don't go back and review what the district court did step-by-step and go back and put yourself in the district court's shoes and say, should I allow this deposit of funds? What's the purpose of it? Why am I doing this? Am I really giving the plaintiff a fair opportunity of class certification? And then go to when the judgment was entered and review what the district court did. That's what appellate courts do. They don't say, well, as the status quo stands here today, judgment has been entered in the plaintiff's favor and so there's some problem with his adequacy. You go back and look at whether the judgment was appropriate or not. That's what a reviewing court does. It goes back and reviews what was done in the district court. And we contend that the deposit orders were an abuse of discretion and that the judgment was erroneous because it was based on the proposition that a deposit of funds moots the case. I'd also like to point out one other thing. A deposit isn't abusive. I mean, they can deposit the money and make it clear to the plaintiff that they're ready to pay it. And then the question becomes whether the plaintiff, the individual, wishes to take the money or not. But there's nothing improper about them tendering it. It depends on what the purpose is. Here, Zokdok said our purpose for depositing these funds is to render the plaintiff's individual claim moot, not to put it somewhere for safekeeping in case the plaintiff wants to take it later. That was not the purpose. It was an offensive litigation tactic. And Rule 67 is not supposed to be used to alter the legal relationships between the parties or as an offensive tactic to moot the other party's claim. It's supposed to be for safekeeping of an asset so that the party who's depositing it doesn't have the burden of safekeeping it anymore. It's a purely neutral procedural device. It's not a weapon to be used against class action plaintiffs. There's one last thing. You have one last point, quickly. The fair opportunity standard, we argue that's part of the holding in Camp Leewald. Zokdok did not dispute that in their brief. They agreed that the fair opportunity standard is part of the holding and it's not dicta. Today, counsel is arguing that it's dicta and it's not dicta. It's part of the holding of the case. Thank you.